**In the United States District Court**
**for the District of Kansas**

---

**United States of America**,
　　　　　Plaintiff,

v.

　　　　　　　　　　　　　　　　Case No. 22-20027-DDC

**Austin Spruell-Ussery**,
　　　　　Defendant.

---

## MOTION TO SUPPRESS EVIDENCE

---

Austin Spruell, by and through counsel, Chekasha Ramsey, in accordance with Rules 12 and 41(b) of the Federal Rules of Criminal Procedure, moves the Court to suppress any evidence obtained during the search of 2337 S. 9th Street, Kansas City, Kansas, conducted on April 11, 2022. Mr. Spruell submits that such evidence was obtained without probable cause in violation of the Fourth Amendment.

## ANTICIPATED STATEMENT OF FACTS

On February 4, 2022, the Bureau of Alcohol and Tobacco and Firearms (ATF) met to develop violent crime reduction initiatives in response to the United States Attorney General's Violent Crime Reduction Strategy Memorandum, dated February 2, 2022. The investigation focused on the

1

Southdale Blood Gang (SBG). During the investigation, ATF identified Austin Spruell as a SBG member. On March 22, 2022, ATF agents set up surveillance at an address they believed members of the SBG were engaged in criminal activity.[1] During this surveillance, video footage captured Mr. Spruell coming and going from the address.

In May 2022, ATF began investigating the shooting of Michael Rojas. Mr. Spruell was identified as an alleged suspect in the shooting. During this investigation, law enforcement identified Hailey Rickett, another alleged suspect and purportedly a witness to the shooting. Law enforcement determined that Ms. Rickett resided at the residence located at 2337 S. 9th Street, and determined the residence was relevant to the shooting. Law enforcement also previously identified Ms. Rickett as the alleged girlfriend of Mr. Spruell. Task Force Officer (TFO) Jakob Blackman began to investigate the home. He spoke with the neighbor of the house who allegedly reported that the house had been a problem for months, and that there were firearms and shooting. As a result, on Thursday, March 31, 2022, TFO Ryan Fincher and ATF Special Agent (SA) Josh Temple began surveillance of 2337 S. 9th Street in order to conduct trash pulls. A trash pull was collected on the same day.

---

[1] The address is unknown at this time because it is redacted in discovery. It does not appear that this address is the home at 2337 S. 9th Street, which was searched and is the subject of this motion.

ATF sorted the trash and collected 12 partial clear plastic bags and paperwork showing the name of Hailey Rickett. Eight baggies were torn corners of plastic bags. Agents field tested the only two small Ziplock baggies which revealed a presumptive positive presence of methamphetamine. The baggies were then packaged and entered into ATF property as evidence. On April 7, 2022, ATF SA Temple and TFO Blackman conducted a second trash pull. ATF agents again searched the trash and located a partial clear plastic baggie with white residue and a pipe. These items were taken to the ATF and field tested. The test revealed the presumptive presence of methamphetamine. The ATF agents filled the prescription paper, packaged, and entered the items as ATF evidence.

On March 25, 2022, an arrest warrant was issued for Mr. Spruell out of Wyandotte County, Kansas.

TFO Blackman determined that Mr. Spruell was Hailey Ricketts's boyfriend as a result of information obtained from the investigation and surveillance. As such, Mr. Spruell was suspected to occasionally reside at 2337 S. 9th Street with Ms. Rickett. On April 11, 2022, members of the ATF Kansas City Field Office and the United States Marshals Service (USMS) assisted with the arrest of Mr. Spruell at 2337 S. 9th Street.

U.S. Marshals along with ATF agents approached the residence and began calling for Mr. Spruell to come out. Mr. Spruell left the home and fled. After a brief chase, USMS Taskforce members arrested Mr. Spruell, took him into custody, and transported him to Wyandotte County Jail.

On the same date and after Mr. Spruell's arrest, TFO Blackman obtained a search warrant for the home.[2] The search warrant was signed and issued by Wyandotte County District Court Judge, Daniel Cahill. After a search of the home, a Glock model 22, S/W/ pistol was found and recovered. On June 29, 2022, Mr. Spruell was charged with felon in possession of a firearm.

## ARGUMENT AND AUTHORITIES

A search or seizure is reasonable under the Fourth Amendment if it is conducted pursuant to a warrant that: (1) is supported by probable cause; and (2) particularly describes the place to be searched, and the persons or things to be seized. *United States v. Cotto*, 995 F.3d 786, 795 (10th Cir. 2021). When a warrant fails to satisfy these two requirements, a search or seizure conducted pursuant to it violates the Fourth Amendment, unless the search or seizure falls within an exception to the warrant requirement. *Id.*

---

[2] *See* Defense Ex. 1-Search Warrant and Affidavit.

The warrant procured in Mr. Spruell's case violates the Fourth Amendment. The warrant is both general and overbroad. The warrant is insufficiently particular and allows officers unbridled discretion to search. The warrant is insufficiently particular, and thus general, because it fails to incorporate the affidavit. The warrant is overly broad because it provides an insufficient basis to issue the warrant and it fails to establish probable cause to search for and seize the listed items. The warrant fails to establish any connection between those items sought and the place to be searched. Blanket suppression is required because the invalid portions of the warrant so predominate the warrant that the warrant, in essence, authorizes a general exploratory rummaging in personal belongings. *United States v. Coriz*, 2023 WL 21852, at *12 (D.N.M. Jan. 3, 2023) (quoting *United States v. Sells*, 463 F.3d 1148, 1158 (10th Cir. 2006)).

I.   **The warrant lacks particularity because it does not state an offense and, thus, authorizes officers to rummage through personal belongings.**

"A particular warrant . . assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal citations omitted). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985).

Here, the warrant fails to state the specific offense that is being investigated and, thus, fails to ensure that the search is confined in scope. The warrant lists nine items to be found, including, broadly, "surveillance equipment" and "[e]lectronic [d]evices to include cell phones." With these categories—and without an offense—law enforcement is, essentially, authorized to engage in the kind of general rummaging prohibited by the Fourth Amendment.

6

Further, TFO Blackman's affidavit does not cure the warrant's particularity problems because it was not incorporated by reference. "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh*, 540 U.S. at 557. A warrant incorporates an underlying affidavit when two requirements are met. *United States v. Suggs*, 998 F.3d 1125, 1135 (10th Cir. 2021). First, "the warrant and the affidavit must be attached," and second, "the warrant must expressly incorporate the affidavit." *Id*. It is not enough for the warrant to merely mention the affidavit or recite that the judge found probable cause; the warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference. *Id*. Here, the warrant does not incorporate the affidavit by reference by using words of reference. The warrant does not refer to the affidavit at all.

Even if the affidavit were properly incorporated, TFO Blackman's affidavit fails to provide a basis for all the items listed in the warrant. The warrant lacks particularity and is, essentially, a general warrant that violates the Fourth Amendment and necessitates suppression.

II.    **The warrant lacks probable cause.**

"Warrants must be supported by probable cause." *Cotto*, 995 F.3d at 796. "An affidavit provided by the government in support of a warrant establishes probable cause if it evinces a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (citing *United States v. Knox*, 883 F.3d 1262, 1275 (10th Cir. 2018)).[3]

A. **The contraband from the trash pulls does not establish probable cause to support that narcotics to include methamphetamine, drug paraphernalia, safe's, united states currency, surveillance will be found in the home at the time of the search.**

The information that the plastic baggies with a residual amount of methamphetamine and a glass pipe is stale and insufficient to create a fair probability that drugs would be found in the home on the date of the search. Therefore, the warrant is unsupported by probable cause to seize the listed items.

---

[3] To be clear, our position remains that the affidavit was not properly incorporated.

"[P]robable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to searched." *United States v. Burkhart*, 602 F.3d 1202, 1206 (10th Cir. 2010) (citing *United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir. 2004)). To determine whether information is stale, courts look at "the nature of the criminal activity, the length of the criminal activity, and the nature of the property to be seized." *Id.* The information in the affidavit includes that on March 31, 2022, agents found 12 knotted and plastic baggies, and 2 of them tested positive for methamphetamine. On April 7, 2022, agents located a torn plastic bag and a pipe that tested positive for the presumption of methamphetamine. The affidavit concludes that Detective Blackman had cause to believe that the law being violated was Possession/Distribution of Controlled Substances.

First, the plastic baggies did not contain a significant amount of methamphetamine. Detective Blackman does not state the methamphetamine was a residual amount in the affidavit. It is clear, however, from the pictures of the recovered baggies contained in the affidavit that only a residual amount of methamphetamine remains in the bags—an amount that cannot be seen with the naked eye.



Small, used baggies containing a residual amount of methamphetamine indicate personal use, not drug trafficking.

The Tenth Circuit has rejected the argument that a trash pull showing evidence of personal use is insufficient to establish probable cause. *United States v. Jenkins*, 819 F. App'x 651 (10th Cir. 2020). However, *Jenkins* discusses the Sixth Circuit case, *United States v. Abernathy*, 843 F. 3d 243, 248 (6th Cir. 2016), which offers an important distinction when considering small quantities of drugs in a trash pull. In *Abernathy*, the probable cause affidavit omitted the defendant's criminal history, "even though the 'Defendant had a lengthy history of drug and weapons charges[.]'" *Jenkins*, 819 F. App'x at 661 (quoting *Abernathy*, 843 F.3d at 248). "Unable to rely on this 'critical missing ingredient,'" the *Abernathy* court "ruled that, standing alone a single trash pull that uncovered evidence of marijuana use was insufficient to support probable cause for a search warrant." *Jenkins*, 816 Fed. App'x at 661 (citing *Abernathy*, 843 F.3d at 255-57). Like *Abernathy*, a critical ingredient is missing here. The affidavit does not contain any corroboration that drug trafficking or possession was occurring at the home at the time of the search. Absent was any anonymous tip, confidential source information, controlled buys at the home, high levels of foot traffic, or any other information that would indicate drug trafficking was occurring at the home. The affidavit does not contain any facts that anyone one in particular at the home was suspected of drug trafficking or had any criminal history indicating drug use or trafficking.

Mr. Spruell's argument here is twofold. First, that the evidence from the trash pulls is not supported by any other information to establish probable cause that drug trafficking was occurring. Second, the type of contraband—baggies with a residual amount of methamphetamine—does not support that the continued presence of methamphetamine is probable. Unlike *Jenkins*, there is no additional evidence that creates probable cause to believe that drug trafficking will be found at the home at the time of the search. While the baggies and pipe with methamphetamine residue suggest that someone possessed or used methamphetamine, this fact only indicates that at some point in time an individual used methamphetamine in the home. There is no way of knowing how much time elapsed between the use of methamphetamine and placing the trash on the curb. The evidence in the trash pulls did not contain a large quantity of discarded contraband which would indicate its continued presence at the home. It only indicates at some point in time methamphetamine was used, but this does not provide a temporal connection which indicates any continuing presence of contraband will be found in the home at the time of the search. The nature of the evidence is merely waste product of past methamphetamine use. "The waste products of marijuana use do not, of themselves, indicate any continuing presence of contraband in the home." *Abernathy*, 843 F.3d at 254 (citing *United States v. Elliott*, 576 F. Supp. 1579, 1580 (S.D. Ohio 1984)).

There is also no evidence to corroborate that drug trafficking or possession was occurring at the home currently. *See Abernathy* 843 F.3d at 253 (citing *Elliot*, 576 F. Supp. at 1582 n.1) ("to 'conclude that such a single instance [of past marijuana use] provides sufficient probable cause for a search warrant would be to subject to a full probing search, the home of a cocktail party host, whose guests, perhaps unbeknownst to him indulge in illicit substances and discard the residue.'"). The evidence of the trash pulls did not create a fair possibility that drugs would be found in the home, on the date of the search. It only indicates that methamphetamine was consumed at the home at some point. The warrant was served three days after the last trash pull. Without additional corroborating facts in the affidavit, probable cause was lacking to search for methamphetamine or other narcotics at the time of the search.

Moreover, the other items (drug paraphernalia, "safe's," United States currency, surveillance equipment, the catch-all provision of records of transaction) are all dependent on establishing probable cause that drug trafficking or possession was occurring at the home at the time it was searched. As such, these items are not supported by probable cause and the warrant does not authorize the search and seizure of these items. The evidence recovered from the trash pulls are stale as such they fail to establish a nexus to the home.

**B. The statement provided by the neighbor does not provide probable cause because it is vague and unreliable that firearms or drug trafficking were occurring at the time of the search.**

The affidavit includes an unreliable statement without any indication of the time the statement was made. The affidavit states:

> "During the investigation, Detective Blackman spoke with a neighbor who said the house has been a problem for a long time and they had seen firearms from people outside the address in recent days. They also described high volumes of people in and out of the residence. "

This statement does not state what date this information was obtained. It does not identify the name or address of the declarant. It does not mention whether drug sales were witnessed at the home. It does not state on what date firearms were seen outside the home or the identity of anyone possessing a firearm. In fact, the statement does not allege that firearms were seen  inside the home, only outside of the home. This statement is wholly unreliable to provide probable cause to search the home. It lacks specificity and provides no way for the Court to determine its reliability.

**C. The affidavit does not establish probable cause to search for firearms based on the alleged Aggravated Kidnapping/Battery because the information of that offense is stale.**

In support of probable cause to believe that offenses against the laws of Kansas have been and are being violated for Aggravated Kidnapping/Battery, the affidavit states the following:

> "Around March 2022, members of the KCKPD Violent Crimes Task Force (VCTF) became aware of the address of 2337 S. 9th Street, Kansas City, Kansas (Wyandotte County). The house was identified after a shooting that took place on March 17, 2022. During that incident, Michael Rojas (W/M, 11-11-1988) along with Brandon Webb (W/M, 08-18-1998) picked up Austin Spruell (W/M, 05-07-1993) at the address. Shortly after picking him up, there was an incident and Spruell and Webb kidnapped Rojas and Rojas was eventually shot by Webb. During the crime, Spruell was also armed with a firearm. During the investigation, Detective Blackman spoke with a neighbor who said the house has been a problem for a long time and they had seen firearms from people outside the address in recent days. They also described high volumes of people in and out of the residence. Webb and Spruell were later charged a warrant was issued in the Wyandotte County District Court. Webb was arrested a week later by the United States Marshals Service (USMS) and Spruell's warrant was adopted as well by the USMS."

15

"[P]robable cause to search cannot be based on stale information that no longer suggest that the items sought will be found in the place to be searched." *United States v. Snow,* 919 F.2d 1458, 1459 (10th Cir. 1990). Information's staleness "depends upon 'the nature of the criminal activity, the length of the activity, and the nature of the property seized.'" *United States v. Campbell*, 603 F.3d 1218 (10th Cir. 2010) (citations omitted). "'[O]ngoing and continuous activity makes the passage of time less critical when judging the staleness of information upon which a search warrant is based,' . . . because evidence of a long standing pattern of repeated activity makes it less likely that the activity has ceased within a short time frame." *United States v. Roach,* 582 F.3d 1192, 1202, 1201 (10th Cir.2009) (quoting *United States v. Mathis*, 357 F. 3d 1200,1207 (10th Cir. 2004)).

The affidavit states that the alleged Aggravated Kidnapping/Battery occurred in March 2022, and, specifically, that a shooting occurred March 17, 2022. The affidavit does not state that a shooting took place at the place to be searched, 2337 S. 9th Street. The only evidence that a nexus exists between the alleged Aggravated Kidnapping/Battery is that Mr. Spruell was picked up from this address approximately one month prior to the affidavit.

16

Aggravated kidnapping and battery are not crimes that are ongoing and continuous, and the affidavit does not suggest such. The affidavit fails to indicate any facts that the alleged kidnapping/battery was ongoing. In fact, a reasonable inference can be made that the shooting and kidnapping completed on March 17, 2022.  The affidavit does not state that the shooting occurred at the residence, only that Mr. Rojas was shot. Therefore, the information provided in the affidavit to support the search warrant for fruits of an alleged kidnapping and battery (i.e., weapons, including firearms, and ammunition) were stale. As a result, there was no nexus between the alleged Aggravated Kidnapping/Battery to suggest that firearms or ammunition will be found at the home at the time of the search. The affidavit does not include any information explaining the reason Detective Blackman believed that any fruits of the alleged kidnapping and battery would be found on the day of the search, approximately one  months after completion of the offense. Therefore, no probable cause existed to search for weapons, firearms, and ammunition based on TFO Blackman's assertions in the affidavit.

**D. The warrant is overbroad, and the affidavit does not include any information to establish probable cause to authorize a search and seizure for electronic devices, including cell phones.**

"[T]he Fourth Amendment requires that warrants describe both the place to be searched and the things to be seized with particularity. The search should be confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *United States v. Brown*, 984 F. 2d 1074, 1077 (10th Cir. 1993). An overly broad warrant "describes in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause." *Cotto*, 995 F.3d at 798.

The affidavit does not establish probable cause to search for and seize cell phones and electronic devices in the home. The affidavit includes three paragraphs laying out Detective Blackman's experience investigating persons involved in the trafficking of illegal drugs but fails to mention the use of electronic equipment or cell phones in any described or alleged offense. The affidavit also fails to establish any reason whatsoever that incriminating evidence would be found on any cell phone or electronic devices belonging to anyone, in particular Mr. Spruell. Therefore, the portion of the warrant that authorizes the search and thereby seizure of cell phones or any electronic devices is without probable cause and the warrant is overbroad.

18

### E. The valid part of the warrant is not severable because the invalid portions predominate.[4]

Defendant maintains that the whole of the warrant is invalid. However, Courts may apply the doctrine of severance to save an overbroad warrant, severing a warrant's valid portions from its invalid portions. *Cotto*, 995 F.3d at 798. "To make the severability doctrine applicable the valid portions of the warrant must be sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant." *United States v. Naugle*, 997 F.2d 819, 822 (10th Cir. 1993). The Tenth Circuit has cautioned, however, that "just because . . . portions of a warrant *can* be severed does not necessarily mean [courts] *may* sever them in all instances." *Suggs*, 998 F.3d at 1138 (emphasis in original). "Even when a part of a warrant is valid and distinguishable, blanket suppression may still be required if 'the invalid portions so predominate the warrant that the warrant in essence authorizes a general exploratory rummaging in a person's belongings.'" *Id.* (citing *Cassady v. Goering*, 567 F.3d 628, 638 (10th Cir. 2009)).

Here, the doctrine of severance cannot save this warrant because the invalid portions predominate, and essentially authorized a general exploratory rummaging. Suppression is required.

---

[4] This argument only applies if the Court finds there are valid portions of the warrant supported by probable cause not in violation of the Fourth Amendment.

CONCLUSION

For the reasons stated above, the warrant was overbroad and lacked

particularity and, thus, violated the Fourth Amendment. Mr. Spruell asks

that the Court suppress the evidence seized as a result of this warrant.


Respectfully submitted,

S/Chekasha Ramsey
Chekasha Ramsey, #78476
Assistant Federal Public Defender
500 State Avenue, Suite 201
Kansas City, Kansas 66101
Phone: (913) 551-6712
Fax: (913) 551-6562
Email: che_ramsey@fd.org
Attorney for Defendant


**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2023, I electronically filed the foregoing
with the Clerk of the Court by using the CM/ECF system, which will send a
notice of electronic filing to all interested parties.


S/Chekasha Ramsey
Chekasha Ramsey, #78476

20