**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| v. | Case No. 22-20027-01-DDC |
| AUSTIN SPRUELL-USSERY (01), | |
| **Defendant.** | |

<u>**MEMORANDUM AND ORDER**</u>

Defendant Austin Spruell-Ussery has filed two Motions to Suppress Evidence.  This Order decides both of them.  Mr. Spruell[1] seeks to suppress all evidence collected from a warranted search of the residence at 2337 S. 9th Street in Kansas City, Kansas.  He asserts two separate theories for such an order:  (1) law enforcement violated his Fourth Amendment rights (Doc. 21) and (2) law enforcement violated Fed. R. Crim. P. 41(b)(1) (Doc. 26).  The government filed a Response opposing both motions (Doc. 27).

*First*, Mr. Spruell seeks suppression under the Fourth Amendment.  He argues that the S. 9th Street warrant didn't comply with the Fourth Amendment's particularity requirement.  He contends that two of the warrant categories—listed without an accompanying offense—authorized too general of a search.  Mr. Spruell also asserts that the warrant lacked sufficient probable cause to issue under the Fourth Amendment.  He identifies four distinct ways the probable cause determination falls short.  *Second*, Mr. Spruell seeks suppression under Fed. R. Crim. P. 41(b)(1).  He argues that, because law enforcement officials secured the warrant from a

---

[1]     While the case is docketed under defendant's full name, both the government and defense briefs refer to him only by "Spruell," and Mr. Spruell confirmed at the evidentiary hearing that this shortened form is the appropriate way to address him.  This Order conforms to his preference.

state court judge instead of an available federal court judge, they violated Fed. R. Crim. P. 41(b)(1).  This violation, he contends, justifies suppressing the evidence.

The court denies both motions.  The court holds the warrant categories were sufficiently particular and that probable cause existed for the warrant's issue.  The warrant thus satisfied both Fourth Amendment requirements.  Also, the court holds that Fed. R. Crim. P. 41 applies—defendant is correct, this case is sufficiently federal in character—but Mr. Spruell didn't demonstrate the requisite prejudice or intentionality to justify suppression for a Rule 41 violation.

This Memorandum and Order explains these decisions, *first*, by reciting the background facts.  *Second*, the Order evaluates the warrant's alleged Fourth Amendment violations—analyzing the warrant's particularity and probable cause determination.  *Third*, the Order analyzes defendant's argument that officials violated Rule 41.  *Finally*, the Order recites the court's overarching conclusions.

## I.     Background Facts

The court held an evidentiary hearing on the motions on August 29, 2023, and continued that hearing until October 18, 2023.  Unless otherwise noted, the court derives the following factual findings from evidence presented at those hearings.

In February 2022, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began investigating the Southdale Blood Gang (SBG) in Kansas City.  As part of that investigation, ATF task force members identified defendant Austin Spruell-Ussery as a gang member.

### *Battery/Shooting/Kidnapping Incident*

On March 18, 2022, Michael Rojas and suspected SBG member Brandon Webb picked up Mr. Spruell around 2337 S. 9th Street in Kansas City, Kansas.  Doc. 27 at 2.  The house at that address belonged to Michael Kindred, known as "Mikey Jones."  Law enforcement officers knew the house as a hangout locale for SBG.  That day, Mr. Spruell allegedly was involved in the aggravated battery, shooting, and aggravated kidnapping of Mr. Rojas.  Law enforcement officers also received information that Mr. Spruell was armed with a firearm while allegedly committing these crimes.

A week later, on March 25, 2022, Wyandotte County prosecutors charged Mr. Spruell with aggravated battery, shooting, and aggravated kidnapping in case number 22-CR-0287.  Doc. 21 at 3; Doc. 27 at 3.  The Wyandotte County state court issued a warrant for Mr. Spruell's arrest, which it turned over to the United States Marshals Service (USMS) to execute.

### *Investigation of 2337 S. 9th Street*

After the shooting, and because of the house's connection to SBG activity, the ATF started investigating the "Mikey Jones" house at 2337 S. 9th Street.  About two months after Mr. Rojas's shooting, on May 31, 2022, ATF agents conducted a trash pull at the house.  In that week's trash, investigators recovered 12 clear plastic baggies.  They identified those baggies as demonstrating use, sale, and storage of narcotics.  Agents field-tested two of the baggies, and both tested positive for methamphetamine.  Along with the bags, agents also found paperwork bearing the name of Hailey Rickett.  She was Mr. Spruell's girlfriend and a potential witness to the shooting of Mr. Rojas, in state court case number 22-CR-0287.

A week later, ATF conducted a second trash pull at the house.  Agents found another plastic baggie with white residue and a broken glass pipe.  Agents recognized these items to

indicate use, sale, and storage of narcotics.  Both the bag and pipe tested positive for methamphetamine.

### *Mr. Spruell's Arrest*

On April 11, 2022, law enforcement officers from the ATF and USMS watched as Mr. Spruell walked outside the house at 2337 S. 9th Street.  They attempted to arrest him.  Doc. 21 at 3–4; Doc. 27 at 4.  But Mr. Spruell ran back inside as the officers approached.  Doc. 27 at 4.  Law enforcement surrounded the house and called for Mr. Spruell to come out of the house.  Doc. 21 at 4; Doc. 27 at 4.  Another person, Jeff Casteel, eventually came outside wearing a red hooded sweatshirt that officers had seen Mr. Spruell wearing earlier.  Doc. 27 at 4.  Mr. Casteel told law enforcement that Mr. Spruell ran inside and removed his clothes, then told Mr. Casteel to put them on and walk outside.  *Id.*  Mr. Casteel also told officers that Mr. Spruell was inside and had a handgun.  *Id.*  Later, Kari Casteel exited the house.  *Id.*

After 20 or 30 minutes, Mr. Spruell finally came back outside the house, screamed at the officers, and then ran to a neighbor's house where he climbed onto the roof.  *Id.*  Eventually, officers took Mr. Spruell into custody, finding him unarmed.  Doc. 21 at 4; Doc. 27 at 4.  After arresting Mr. Spruell, officers spoke with Ms. Casteel, who told them about two firearms in the house.  Doc. 27 at 4.  She said one belonged to Mr. Spruell, and she knew from Ms. Rickett that the gun was wrapped in a white shirt and hidden in Ms. Casteel's closet.  *Id.*

### *Search of 2337 S. 9th Street*

Jakob Blackman works for both the ATF as a Task Force Officer (TFO) and as a detective for the Kansas City, Kansas Police Department (KCKPD).  On the day officers arrested Mr. Spruell, TFO Blackman applied for a warrant to search 2337 S. 9th Street.  A Wyandotte

County District Court Judge issued the warrant the same day, and it authorized law enforcement

officials to seize:[2]

- Narcotics to include Methamphetamine
- Drug Paraphernalia
- [Safes]
- Weapons to include firearms
- Ammunition
- United States currency
- Surveillance equipment
- Electronic Devices to include cell phones
- [R]ecords of narcotics transactions, and documents which prove legal occupancy including, but not limited to, writings, books, checkbooks, and bank account statements, magazines, records, tax receipts, utility receipts, rent receipts, post-marked envelopes, photographs, and keys, all of which tend to show the identity of persons in ownership, dominion, or control of said premises.

Members of the KCKPD's Special Operations Unit executed the warrant the same day,

April 11.  *Id.* at 4.  Officers found a small amount of methamphetamine along with drug

paraphernalia and ammunition in one room of the house, which they believed belonged to Mr.

Kindred or "Mikey Jones."  *Id.* at 5.  In the east bedroom closet, officers found two firearms.

They determined one belonged to Mr. Casteel.  *Id.*  The other firearm was a Glock model 22 .40

caliber pistol with serial number EDE011, which they found in a closet and wrapped in a white

garment.  Doc. 21 at 4; Doc. 27 at 5.  The search also produced three cell phones.  Doc. 27 at 5.

When officers called Mr. Spruell's known phone number, one of the phones began to ring.  *Id.*

Detective Blackman took the evidence to KCKPD headquarters for processing and storage.  *Id.*

ATF later received the handgun from KCKPD and took possession of it.

---

[2]          The court admitted the search warrant at the evidentiary hearing as Government Exhibit 1.

II.   **Fourth Amendment Challenge (Doc. 21)**

Mr. Spruell asserts five separate Fourth Amendment grounds to contest the warrant's validity.  First, he contends the warrant lacked the requisite particularity.  The other four grounds all contend that the warrant lacked substantial probable cause.  The government disputes all five of Mr. Spruell's assertions.  It also argues that Mr. Spruell lacks standing to challenge the warrant because he lacked a reasonable expectation of privacy in the searched residence.  The court begins with the standing issue.

A.   **Standing**

Mr. Spruell neither owned nor lived in the searched residence.  To mount a Fourth Amendment challenge, a defendant must show "a cognizable Fourth Amendment interest in the place searched[.]"  *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018).  In other words, a defendant must establish "Fourth Amendment standing."  *Id.*  A defendant can establish this requisite standing by showing that he had a reasonable expectation of privacy in the place searched.  *See id.* at 1527.  A defendant "does not have to be 'settled' at a location to have a reasonable expectation of privacy; a simple overnight guest has Fourth Amendment standing."  *United States v. Poe*, 556 F.3d 1113, 1122 (10th Cir. 2009) (citing *Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990)).  Our Circuit has distinguished between an individual "legitimately on the premises" and a "social guest"—a social guest "has a degree of acceptance into the household" and an "ongoing and meaningful connection" to the home.  *Id.* (internal quotation marks and citations omitted).

When evaluating a defendant's reasonable expectation of privacy in a given residence, our Circuit has considered a defendant's overnight stays in the residence, leaving receipts at the residence, and the guest's permission, if any, to enter the residence during the resident's absence.  *United States v. Rhiger*, 315 F.3d 1283, 1286 (10th Cir. 2003)).  Other factors the Circuit has

cited include a defendant's possessing a key to the residence, inviting other visitors into the residence, and permission to remain at the residence even when the owner leaves.  *Poe*, 556 F.3d at 1122–23.

In the present case, Mr. Spruell testified that he frequently stayed overnight at the residence, with the owner's permission.  He left clothing there, showered there, and did his laundry there.  Pole cam video footage from the night of April 10, 2023, and the morning of April 11, 2023 show the defendant entering the residence, and it confirms that Mr. Spruell entered and re-entered the residence multiple times throughout the overnight hours and into the morning.  Mr. Spruell testified that he slept on the couch there for a few hours that night and that he had permission to remain at the residence even after Mikey Jones, the owner, left for work.  Such testimony ticks multiple standing boxes—overnight stays, leaving items, permission to remain in the owner's absence—which suggests Mr. Spruell was a social guest with "'a degree of acceptance into the household'" and an "'ongoing and meaningful connection'" to the home.  *Id.* at 1122 (quoting *Rhiger*, 315 F.3d at 1286–87).  So, the court finds that Mr. Spruell possessed a reasonable expectation of privacy in the S. 9th Street residence and, thus, he has standing to challenge the warrant under the Fourth Amendment's particularity and probable cause requirements.  The court turns to the particularity requirement, next.

### B.  Particularity

According to the Fourth Amendment, a warrant may not issue without "particularly describing . . . the persons or things to be seized."  U.S. Const. amend. IV.  The warrant is too general, and therefore invalid, if it "vest[s] the executing officers with unbridled discretion to conduct an exploratory rummaging through the defendant's property in search of criminal evidence."  *United States v. Cotto*, 995 F.3d 786, 798 (10th Cir. 2021) (internal citation, quotation marks and brackets omitted).  A warrant is "sufficiently particular" if it "enables the

searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Cooper*, 654 F.3d 1104, 1126 (10th Cir. 2011) (citation and internal quotation marks omitted). This "requirement ensures the search will be carefully tailored to its justifications[.]" *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  The warrant's language itself may satisfy this particularity requirement.  *United States v. Suggs*, 998 F.3d 1125, 1134–35 (10th Cir. 2021).  But when it does not, "that gap can sometimes be filled if the warrant specifies the crime under investigation" or if a "supporting affidavit, [attached and incorporated, cures] a warrant's lack of particularity." *Id.*

Mr. Spruell takes issue with two categories in the warrant:  "surveillance equipment" and "[e]lectronic [d]evices to include cell phones."  Doc. 21 at 6.  Neither category names a specific offense and so, Mr. Spruell argues, the warrant authorizes "general rummaging."  *Id.*  Mr. Spruell then contends that TFO Blackman's unincorporated affidavit can't cure this aspect of the warrant's lack of particularity.  *Id.* at 7.  But, under *Suggs*, the court only examines these issues—whether the warrant identifies a specific offense and whether an affidavit is incorporated—when the warrant's language fails the particularity test.  998 F.3d at 1134–35.  That is, the court need only look beyond the warrant's language if there's a gap in that language.  Here, the warrant's language is sufficiently particular standing alone.  The categories of "surveillance equipment" and "[e]lectronic [d]evices to include cell phones" allow the "searcher to reasonably ascertain and identify," *Cooper*, 654 F.3d at 1126, what the warrant authorizes, so those categories don't authorize "exploratory rummaging," *Cotto*, 995 F.3d at 798.  Equipment and electronic devices are identifiable by their appearance, size, and the average person's ready familiarity with them.  And the equipment and devices authorizations are "carefully tailored to the warrant's justifications" because the warrant contemplated a narcotics offense, which

justifies searching for a narcotics trafficker's record of transactions.  *Garrison*, 480 U.S. at 84.

The court thus holds that the warrant here doesn't lack the requisite particularity.

So, the warrant withstands the first of Mr. Spruell's Fourth Amendment-based

challenges.  The court now turns to the second dispute about the warrant's issuance:  whether

probable cause existed to issue it.

### C.  Probable Cause

"Probable cause refers to a probability or substantial chance of criminal activity based on

the commonsense and practical considerations of everyday life."  *United States v. Pulliam*, 748

F.3d 967, 971 (10th Cir. 2014) (internal citations, quotation marks and brackets omitted).  When

a court reviews a warrant for probable cause, it must ensure that the issuing judge "had a

substantial basis for concluding that probable cause existed."  *United States v. Sells*, 463 F.3d

1148, 1154 (10th Cir. 2006) (internal citation and quotation marks omitted).  The court must

decide whether the issuing judge, based on the supporting affidavit submitted to the issuing

judge, rightly deciphered "a fair probability that contraband or evidence of a crime will be found

in a particular place."  *Cotto*, 995 F.3d at 796 (citation and internal quotation marks omitted).  In

a "doubtful or marginal case," the court defers to the issuing judge's determination of probable

cause.  *Pulliam*, 748 F.3d at 971.

Mr. Spruell presents four distinct arguments contending that the warrant here lacked

probable cause.  The court now addresses each one in turn.

*First*, Mr. Spruell contends that both the trash-pull contraband and the 22-CR-0287

offense information were "too stale" to support probable cause because the implicated offenses

were not "ongoing and continuous."  Doc. 21 at 8–9, 15–16.  An issuing judge cannot base

probable cause on stale information.  *United States v. Brown*, 586 F. Supp. 3d 1075, 1084 (D.

Kan. 2022).  Under Tenth Circuit law, staleness depends on the nature of the crime, the length of

criminal activity, and whether the activity is ongoing and continuous. *United States v. Hernandez*, 94 F.App'x 697, 700 (10th Cir. 2004). Here, the two consecutive trash pulls, executed just four and seven days before the warrant's issuance, make it likely that any possible drug-related activity at the residence was ongoing. And Mr. Spruell had an active warrant for an offense involving a firearm and also allegedly possessed a firearm on April 11, 2022. These events suggest—at least potentially—continuous firearm activity. Doc. 27 at 2, 17, 19. The court thus concludes that the trash pull contraband and the 22-CR-0287 offense information weren't too stale to support a probable cause determination.

*Second*, Mr. Spruell asserts that the trash pulls alone failed to establish probable cause because there was no additional drug-related prosecution or other corroboration to support drug trafficking—as opposed to simple personal use—at the residence. Doc. 21 at 9–13. In *United States v. Jenkins*, the Tenth Circuit held that a single trash pull, securing a single methamphetamine baggie, when combined with a defendant's "ongoing drug-related prosecution," can support probable cause. 819 F. App'x 651, 661 (10th Cir. 2020). Mr. Spruell argues that because no similar ongoing prosecution existed here, the trash pull contraband couldn't establish probable cause as it did in *Jenkins*. *Id.* But Mr. Spruell's version of the facts is a fanciful one. Law enforcement officials had conducted two successive trash pulls, securing a total of 13 baggies and a pipe—significantly more evidence than *Jenkins*' single baggie. *Id.* The court thus concludes that the issuing judge, based on this greater quantity of evidence, rightly deciphered "a fair probability" that law enforcement agents would find "contraband or evidence of a crime" at the 9th Street residence. *Cotto*, 995 F.3d at 796.

*Third*, Mr. Spruell argues that the neighbor's statements don't establish probable cause because they are "vague and unreliable." Doc. 21 at 15. A probable cause determination should

weigh an informant's "veracity, reliability, and basis of knowledge." *Pulliam*, 748 F.3d at 971. For example, in *Pulliam*, a criminal defendant, indicted on felon in possession and armed career criminal charges, moved to suppress evidence from a search of his home. *Id.* at 970. The affidavit for the *Pulliam* search warrant explicitly named an informant who had "reliably led police to contraband in the past." *Id.* at 971. Not only did the affidavit include the informant's name and the informant's pattern of relations with law enforcement, but it also "set forth the basis for [the informant's] personal knowledge" and included "a detailed description of [the informant's] sale of a handgun to [the defendant.]" *Id.* Here, the affidavit's treatment of the informant falls far short of this standard. TFO Blackman reported the neighbor's statements in the affidavit, but he failed to include the neighbor's name, the neighbor's address, or the date when the neighbor made the statement. *Id.* Nor did TFO Blackman establish the neighbor's reliability based on earlier interactions with law enforcement or any equivalent indication. Finally, TFO Blackman offered no basis for the neighbor's knowledge, apart from the neighbor's proximity to the residence. The court thus agrees with Mr. Spruell. The neighbor's statements can't contribute to probable cause.

*Fourth*, Mr. Spruell argues that the affidavit doesn't establish probable cause to search for electronic devices and cell phones. Doc. 21 at 18. The affidavit doesn't request authorization specifically to seize electronic devices or cell phones.[3] Despite the absence of this request, the warrant authorizes seizure of "Electronic Devices to include cell phones." Mr. Spruell contends that this disconnect is problematic. The government responds that TFO Blackman, discussing his police experience in the supporting affidavit, specifically references drug traffickers' frequent use of "electronic storage devices" to record transactions. Doc. 27 at

---

[3]     The court admitted the affidavit at the evidentiary hearing as Government Exhibit 1.

20.  Cell phones, the government asserts, "are rationally included" as an electronic storage device, and so, the affidavit—taken as a whole—established probable cause to search for electronic devices and cell phones.  *Id.*

According to our Circuit, probable cause may rely, at least in part, on an "affiant's experience and expertise."  *United States v. Soussi*, 29 F.3d 565, 569 (10th Cir. 1994).  In *United States v. Wicks*, the Circuit evaluated a district court's probable cause determination and affirmed a district court's ruling "that probable cause supported the issuance of the search warrant."  995 F.2d 964, 973 (10th Cir. 1993).  In so deciding, our Circuit considered "the agents' opinion, based on their experience" that law enforcement would find evidence of drug trafficking in defendant's motel room.  *Id.* at 972.  Here, TFO Blackman has five years of experience with the ATF.  Like the agents in *Wicks*, TFO Blackman's professional expertise thus may serve as a source of probable cause.  TFO Blackman's affidavit rationally connected drug trafficking to electronic storage devices.  And it makes sense that such devices could include cell phones.  So, the affidavit taken as a whole, supports probable cause to seize cell phones, even though TFO Blackman neglected to request such authorization explicitly.

In sum, the court holds that contraband in the trash pulls, the link to case 22-CR-0287, and TFO Blackman's expertise together provided a substantial basis for probable cause to issue the warrant, even when one omits the neighbor's statements.  The deference owed to an issuing judge's determination of probable cause further supports the court's conclusion.

So, the warrant withstands both Mr. Spruell's particularity and probable cause challenges under the Fourth Amendment.  Neither of these arguments can justify suppression of the seized evidence.  The court now turns to Mr. Spruell's next challenge:  that law enforcement's alleged violation of Fed. R. Crim. P. 41(b)(1) justifies suppression.

### III.   Fed. R. Crim. P. 41(b)(1) Challenge (Doc. 26)

Mr. Spruell presents a second suppression argument in his Amended Motion to Suppress

Evidence Obtained in Violation of Fed. R. Crim. P. 41(b)(1) (Doc. 26).   Rule 41(b) governs the

proper venue for search warrant applications.   Though somewhat unclear, Mr. Spruell appears to

contend that the warrant here violates Rule 41 because a Wyandotte County state court judge

issued it, as opposed to a reasonably available federal magistrate judge.   Doc. 26 at 1–2.   Mr.

Spruell argues that the state court judge lacked Rule 41 authority to issue the search warrant, so

the court should suppress evidence from the search.   *Id.* at 7.   The government disagrees.

It argues that involvement of a state court judge was proper because state court charges

informed the warrant's issuance, a KCKPD detective sought the warrant, and the KCKPD

received and processed the evidence.   Doc. 27 at 8.   To evaluate these arguments, the court, first,

must determine whether Rule 41 applies to this warrant.   If it applies, the court next must analyze

whether the alleged Rule 41 violation to justifies suppression—that is, whether the alleged

violation was prejudicial or intentional and deliberate.   The court analyzes whether Rule 41

applies to the present case, below

#### A.   Rule 41 and a Search that is Federal in Character

Fed. R. Crim. P. 41(b)(1) provides:   "a magistrate judge with authority in the district—or

if none is reasonably available, a judge of a state court of record in the district—has authority to

issue a warrant[.]"   Rule 41 applies to a given warrant's issuance only when the search is

sufficiently "federal in character."   *United States v. Pennington*, 635 F.2d 1387, 1389 (10th Cir.

1980).   Characteristics for a "federal" search include:   the direct involvement of federal officers

in "carrying out the search itself and in taking immediate custody of the fruits of the search," or

an assumption "from the beginning" that "a federal prosecution would result."   *Pulliam*, 748

F.3d at 974 (internal citations and quotation marks omitted).   Clearly *non*-federal searches

include those where "the warrant was requested by a state law enforcement officer," "issued by a state magistrate judge," and there's "no evidence that a federal prosecution was envisioned at the time of the search." *United States v. Barrett*, 496 F.3d 1079, 1090–91 (10th Cir. 2007).

The government proffers that, in the mixed circumstances of a "joint federal-state law-enforcement investigation," the Fourth Circuit has held that "nothing in the Federal Rules of Criminal Procedure" suggests that "all search warrants must be obtained under . . . 41(b)." *See* Doc. 27 at 7 (citing *United States v. Claridy*, 601 F.3d 276, 282 (4th Cir. 2010)). The Tenth Circuit, however, typically characterizes searches as either state or federal. *See, e.g., United States v. Bookout*, 810 F.2d 965 (10th Cir. 1987). In *United States v. Nelson*, for example, this court concluded a mixed federal-state investigation (involving the same TFO Blackman) was federal in character due to "the degree of involvement by federal agents in the investigation and . . . in the actual search[.]" No. 19-20059-01, 2020 WL 6343301, at *13 (D. Kan. Oct. 29, 2020).

The present case likewise presents a mixed federal-state investigation. TFO Blackman is cross-deputized with the ATF and the KCKPD. Doc. 21 at 4. TFO Blackman and other federal ATF agents conducted the search, but Blackman took the search's fruits to KCKPD headquarters for processing and storage. *Id.* at 4; Doc. 27 at 5. Now, however, the firearm is in ATF custody. The government concedes that TFO Blackman envisioned a federal prosecution, but also notes that officers arrested Mr. Spruell's on state court charges. Doc. 27 at 8. The court thus concludes this mixed federal-state investigation had sufficient federal involvement—as in *Nelson*—to justify a federal characterization. 2020 WL 6343301, at *13. So, Rule 41 applies to this warrant.

But the simple applicability of Rule 41 alone can't justify suppression of evidence. Even when law enforcement violates Rule 41—and the court declines to decide whether they did so here—a defendant also must show the ramifications of such a violation to justify suppression. A defendant must demonstrate the Rule 41 violation "was (1) of constitutional magnitude; (2) prejudicial; or (3) intentional and deliberate." *United States v. Sadlowski*, 948 F.3d 1200, 1204 (10th Cir. 2020) (citation omitted). Mr. Spruell never argues the alleged Rule 41 violation was of constitutional magnitude, so the court need not address this prong of the analysis. The court evaluates prongs two and three, below.

## B. Prejudicial

According to *United States v. Krueger*, a Rule 41 violation prejudices a defendant when "the search might not have occurred or would not have been so abrasive if the Rule had been followed[.]" 809 F.3d 1109, 1115 (10th Cir. 2015). *Krueger* held that a judge in the District of Kansas lacked authority—because of territorial limitations—to issue a search warrant for property located in Oklahoma. *Id.* at 1116–17. Because the issuing judge "clearly lacked Rule 41 authority to issue a warrant," the warrant violated Rule 41(b)(1) and its issuance constituted "gross negligence," prejudicing the defendant. *Id.* In keeping with the deterrent purposes of suppression, the court suppressed the evidence seized under the offending warrant to deter such gross negligence in the future. *Id.*; *see also Cotto*, 995 F.3d at 795 (10th Cir. 2021) (explaining that the exclusionary rule "is a disincentive for law enforcement to engage in unconstitutional activity,") (quoting *United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018)).

Premising his argument on *Krueger*, Mr. Spruell asserts that the April 11 search "might not have occurred" had the court followed Rule 41(b)(1). Doc. 26 at 6. But, in *Krueger*, the court found that the issuing judge lacked clear authority because of territorial limitations. 809

F.3d at 1116–17.  No issue of territorial limitations exists here.  Nor did the issuing judge clearly lack authority on other grounds.  This case's state-federal mixture made a state court judge's issuing authority plausible.  So, the judge's decision to issue a warrant cannot constitute gross negligence leading to prejudice as it did in *Krueger*.  *Id.*  Mr. Spruell offered no other basis for prejudice—he grounded his sole argument in *Krueger*.  Mr. Spruell thus has failed to establish the alleged Rule 41 violation was prejudicial.

### C.  Intentional and Deliberate

Nor has Mr. Spruell established that the alleged Rule 41 violation was intentional and deliberate.  For a Rule 41 violation to justify suppression under the intentional and deliberate prong, a defendant must show that "'there is evidence of intentional and deliberate disregard for a provision of the Rule.'"  *Nelson*, 2020 WL 6343301, at *13 (quoting *Pulliam*, 748 F.3d at 973).

Mr. Spruell contends that TFO Blackman's extensive experience with the ATF and involvement with a previous case addressing the same issue—*United States v. Nelson*—proves the violation was intentional and deliberate.  Doc. 26 at 7.  It's true.  The *Nelson* case had similar elements of cross-deputized individuals, drug and firearm possession charges, and a state court warrant—and, of course, the same Task Force Officer.  2020 WL 6343301 at *2–5.  While these similarities could indicate patterned intentionality, both the *Nelson* case and this one possessed state and federal elements.  *Id.*  The mixed character of these cases offers an alternative, and compelling, explanation for requesting a warrant from a state court judge:  the state court elements of the case made this choice a logical one.  So, any accusation of "intentional or deliberate disregard" here is speculative.  And the court declines to engage in speculation.  Mr. Spruell thus hasn't persuaded the court that any alleged Rule 41 violation was intentional or deliberate.

16

In sum, the alleged Rule 41 violation doesn't justify suppressing the evidence.  Even if law enforcement violated Rule 41—and the court needn't decide whether they did—Mr. Spruell hasn't shown that the violation was prejudicial or intentional and deliberate.

## IV.   Conclusion

The court holds the warrant sufficiently particular and supported by probable cause. Seizing the challenged evidence under the warrant thus didn't violate Mr. Spruell's Fourth Amendment rights.  The court also holds that the alleged violation of Fed. R. Crim. P. 41(b)(1)— even if a violation occurred—doesn't justify suppression because the violation was neither prejudicial nor intentional and deliberate.  Neither of Mr. Spruell's theories persuade the court to suppress the evidence, so the court thus denies both of his motions.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Spruell's Motion to Suppress Evidence (Doc. 21) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant Spruell's Amended Motion to Suppress Evidence Obtained in Violation of Fed. R. Crim. P. 41(b)(1) (Doc. 26) is denied.

**IT IS SO ORDERED.**

**Dated this 15th day of November, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**